UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RODNEY YOUNG** | **CIVIL ACTION** |
| **VERSUS** | **No. 08-1972** |
| **INTERMOOR, INC., ET AL.** | **SECTION I/3** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed on behalf of defendant, Seacor Marine, L.L.C. ("Seacor").[1] Plaintiff, Rodney Young, opposes the motion. For the following reasons, the motion is **DENIED**.

### *BACKGROUND*

On April 24, 2008, plaintiff filed this lawsuit against defendants, Intermoor, Inc. ("Intermoor") and Seacor.[2] Plaintiff alleges that he was injured on February 26, 2008, while working as a seaman aboard the M/V Seacor Vision.[3] Plaintiff's complaint asserts a negligence claim against both defendants and an unseaworthiness claim against Seacor.[4]

Plaintiff was allegedly injured while employed by Intermoor as part of an anchor-handling crew.[5] Intermoor had been hired by Noble Drilling to perform anchor-handling operations in connection with moving the offshore oil rig, Lorris Bouzigard.[6] Plaintiff alleges that he injured his back when he used a pry bar to untangle a 3-1/2 inch anchor wire that was

---

[1] R. Doc. No. 50.
[2] R. Doc. No. 1.
[3] R. Doc. No. 3, para. vi.
[4] R. Doc. No. 3, para. viii.
[5] R. Doc. No. 3, para. vi.
[6] R. Doc. No. 50-7, p.1.

1

being used as part of the Intermoor operation.[7] At the time of plaintiff's accident, no Seacor crewmembers were in the section of the vessel where the accident occurred.[8]

On February 11, 2010, Seacor filed this motion for summary judgment arguing that plaintiff's negligence and unseaworthiness claims against Seacor should be dismissed. Seacor contends that Intermoor and Seacor had entered into a utilization agreement[9] wherein Seacor merely provided vessels and navigational crews so that Intermoor could provide services to offshore drilling rigs and platforms.[10] According to Seacor, no Seacor employees were involved in, or responsible for, the provision, loading, or use of any of the equipment involved in the Intermoor anchor-handling operation that led to plaintiff's alleged injury.[11] Further, Seacor contends that the tangled anchor-handling wire had been coiled by Intermoor personnel prior to being loaded aboard the M/V Seacor Vision.[12]

## STANDARD OF LAW

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. Celotex, 477 U.S. at 323; Fontenot v. Upjohn Co., 780 F.2d 1190, 1195 (5th Cir. 1986).

---

[7] R. Doc. No. 3, para. vi.
[8] R. Doc. No. 50-16, p. 12.
[9] R. Doc. No. 50-3.
[10] R. Doc. No. 50-2, p. 1.
[11] R. Doc. No. 50-2, p. 5.
[12] R. Doc. No. 50-7, p. 21.

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The non-moving party must carry this burden as to each essential element on which it bears the burden of proof. Schaefer v. Gulf Coast Regional Blood Center, 10 F.3d 327, 330 (5th Cir. 1994). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. Id. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." Id. at 255; see Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

## *DISCUSSION*

**I. Negligence Claim**

In order to plead a claim for negligence under the general maritime law,[13] a "plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by plaintiff, and a causal connection between defendant's conduct and the plaintiff's injury." In re Cooper/T. Smith, 929 F.2d 1073, 1077 (5th Cir. 1991). Additionally, the resultant harm must be reasonably foreseeable. Id. Plaintiff's complaint alleges that Seacor

---

[13] Plaintiff's claim against Seacor is based on the general maritime law, rather than the Jones Act, because a seaman may bring a lawsuit under the Jones Act only against his employers. Scarborough v. Clemco Industries, 391 F.3d 660, 667 (5th Cir. 2004). Plaintiff does not allege that he was employed by Seacor.

3

was negligent because its employees failed to properly supervise, direct, and control the loading, stowing, and retrieval of the anchor-handling wires aboard the vessel.[14]

Seacor contends that it is entitled to summary judgment with respect to plaintiff's negligence claims because plaintiff cannot demonstrate that Seacor employees were involved "in any way" in the loading or use of any of the anchor-handling equipment, including the tangled wire that allegedly caused plaintiff's injury.[15]

Plaintiff concedes that Seacor is not responsible for the actions of the Intermoor employees.[16] Additionally, plaintiff does not dispute the uncontested testimony that no Seacor employees, including the M/V Seacor Vision's captain, were in any way involved with the loading or operation of the anchor-handling equipment.[17] Plaintiff argues, however, that summary judgment is inappropriate with respect to the negligence claim because the M/V Seacor Vision's captain, a Seacor employee, had a duty to ensure that the vessel was safely loaded. In support of that argument, plaintiff points to the testimony of his expert, Robert Borrison ("Borrison"), who stated that the captain's failure to properly and safely load the vessel was the direct cause of the accident.[18]

Borrison states that his opinion is based on his experience in the oil and gas and marine industry and British Petroleum's—a company not involved in the lawsuit—guidelines and recommendations for offshore support vessels.[19] Although Borrison provides no evidence or other authority to support his opinion that the captain had a duty to ensure that the equipment was properly loaded, it may be argued that the expert report implies that such a duty exists. Accordingly, the Court is not comfortable granting a summary judgment motion with respect to

---

[14] R. Doc. No. 3, para. viii.
[15] R. Doc. No. 50-2, p. 5.
[16] R. Doc. No. 58, p. 13.
[17] R. Doc. No. 50-7, p. 20; R. Doc. No. 50-17, pp. 3-4, 7.
[18] R. Doc. No. 58, p. 13, citing R. Doc. No. 58-5, p. 6.
[19] R. Doc. No. 58-5, p. 6.

4

the negligence issue and it believes that the more prudent course of action is to receive evidence at trial with respect to this issue.

**II. Unseaworthiness claim**

"The owner of the vessel has a duty to provide a vessel that is reasonably fit for its intended use. This duty to provide a seaworthy vessel requires that the vessel, its gear, appurtenances, and operation must be reasonably safe." Drachenberg v. Canal Barge Co., Inc., 571 F.2d 912, 918 (5th Cir. 1978). This duty extends to "the hull of the vessel, the vessel's cargo handling machinery, lines and tackle and all kinds of equipment either belonging to the vessel owner or brought aboard by others." Bush v. Diamond Offshore Co., 46 F.Supp.2d 515, 520 (E.D.La. 1999) (Fallon, J.). "A vessel's condition of unseaworthiness might arise from any number of circumstances. Her gear might be defective, her appurtenances in disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient. The method of loading her cargo, or the manner of its stowage might be improper." Nichols v. Weeks Marine, Inc., 513 F.Supp.2d 627, 635 (E.D.La. 2007) (Fallon, J.) (quoting Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 499-500 (1971)). The duty of seaworthiness does not, however, extend to providing "a perfect or accident-free vessel." Phillips v. Western Co., 953 F.2d 923, 928 (5th Cir. 1992).

Seacor argues that plaintiff's unseaworthiness claim against Seacor should be dismissed for two reasons: (1) the equipment involved in plaintiff's alleged accident was not an appurtenance of the vessel; and (2) the equipment that allegedly caused plaintiff's injury was fit for its intended use. The Court will examine each of these arguments in turn.

A. <u>Whether the equipment used was appurtenant to the vessel</u>

As noted above, the duty of seaworthiness extends not just to the vessel but to all equipment that is appurtenant to the vessel. <u>Drachenberg</u>, 571 F.2d at 918. An appurtenance is "any identifiable item that is destined for use aboard a specifically identifiable vessel and is essential to the vessel's navigation, operation or mission." <u>Coakley v. SeaRiver Maritime, Inc.</u>, 319 F.Supp.2d 712, 714 n. 1 (E.D.La. 2004) (<u>quoting</u> <u>Scott v. Trump Indiana</u>, 337 F.3d 939, 944 (7th Cir. 2003)). An item can be appurtenant to the vessel even where the item is brought aboard by a contractor and the vessel did not sanction its use or know of its existence. See <u>Deffes v. Federal Barge Lines, Inc.</u>, 361 F.2d 422, 426 (5th Cir. 1966).

In <u>Drachenberg</u>, the Fifth Circuit examined the relevant factors one should look to when determining whether a piece of equipment is appurtenant to the vessel. The court noted that "certain types of temporary attachment to the vessel by equipment not part of the ship's usual gear or stored on board or controlled by the ship's crew can satisfy the requirements for [equipment to be appurtenant to the vessel]." <u>Drachenberg</u>, 571 F.2d at 920. The court also observed that it is "highly significant" when an accident occurs on-board the vessel as opposed to dockside. <u>Id.</u> at 921. Where an injury occurs on-board the vessel, a court should look only to whether there is a "minimal attachment" between the equipment and the ship. <u>Id.</u>

The anchor-handling wire that allegedly caused plaintiff's injury was appurtenant to the vessel. The accident occurred aboard the ship and involved a piece of equipment, the anchor-handling wire, that was central to the vessel's mission of providing anchor-handling support to the Lorris Bouzigard. It occurred while the anchor-handling line was attached to the vessel via the vessel's tugger.[20] Such minimal attachment is sufficient to make an item appurtenant to the vessel. See <u>Drachenberg</u>, 571 F.2d at 920 (noting that the Supreme Court has in effect found that

---

[20] R. Doc. No. 58-3, p. 2.

a landfall runner, brought aboard by a stevedore company and attached to the ship only by way of one of the ship's winches, was an appurtenance of the vessel) (citing Rogers v. United States Lines, 347 U.S. 984 (1954) (per curiam)). Because the equipment was appurtenant to the vessel, Seacor was responsible for the unseaworthy condition of such equipment.[21]

### B. Whether the equipment was fit for its intended use

In order to demonstrate that the anchor-handling wire was unseaworthy, plaintiff must demonstrate that such wire was not "reasonably fit for its intended purpose." Drachenberg, 571 F.2d at 918. Plaintiff alleges that the wire was not reasonably fit for its intended purpose because it was tangled.[22] Seacor contends that it is unreasonable to hold that a vessel owner has a duty to keep every single coiled wire or rope on the deck of a vessel from being tangled in some manner while at sea.[23] Seacor argues that the eventual use of the wire demonstrates that it was reasonably fit for its intended purpose.

Plaintiff notes, at the time of his alleged injury, the wire had to be untangled before it could be used.[24] According to Max Buteaux ("Buteaux"), the Intermoor superintendent in charge of the anchor-handling operation in question, the knot in the wire would prevent the wire from uncoiling itself.[25] As a result, it was only after plaintiff changed the condition of the wire that it became fit for use.

With respect to whether it is reasonable to require a shipowner to prevent this wire from becoming tangled, plaintiff points to the testimony of Carl Allen Horton ("Horton"), another

---

[21] Seacor contends that R.O. Bennet v. Faircape Steamship Corp. provides controlling precedent in this matter. 524 F.2d 979 (5th Cir. 1975) (per curiam). Although R.O. Bennet also involved an injury that occurred while the plaintiff attempted to untangle gear, that case involved an injury that occurred on land. As noted in Drachenberg, the location of the injury is "highly significant" in determining whether equipment was appurtenant to the ship. Drachenberg, 571 F.2d at 921.
[22] R. Doc. No. 3, p. 3.
[23] R. Doc. No. 50-2, p. 12.
[24] See Nichols, 513 F.Supp.2d at 631, 635 (finding that where a cable was tangled around a drum, the drum became unfit for its intended purpose).
[25] R. Doc. No. 50-7, p. 14.

7

Intermoor crew member, who testified that he had never seen anchor-handling lines tangled in that manner.[26] Further, Buteaux testified that the anchor-handling line was not supposed to have a knot in it. The testimony establishes a genuine issue of material fact with respect to whether, at the time of plaintiff's accident, the anchor-handling line was in an unseaworthy condition.

### *CONCLUSION*

For the reasons stated above,

**IT IS ORDERED** that Seacor's motion for summary judgment is **DENIED**.

New Orleans, Louisiana, April 27, 2010.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[26] R. Doc. No. 58-4, p. 2.